CUTRER, Judge.
This is a suit for judicial review of an administrative determination that Maxie F. Ellis is entitled to unemployment compensation benefits. LSA-R.S. 23:1634.
Ellis was employed by the Pinecrest State School, an institution for mentally and physically impaired persons. Ellis’ duties were to care for and supervise the care of the patients in a cottage. She was supervisor over other employees who attended to the needs of the patients in the cottage. She was terminated from her employment on April 3, 1981, for the abuse of a patient by striking him and the improper administration of drugs on three occasions, once each year for 1979, 1980 and 1981.
Ellis filed a claim for unemployment compensation benefits which were denied by the Agency. Upon appeal of this ruling and, after a hearing, the appeals referee reversed the Agency determination and found Ellis qualified for benefits. The Board of Review affirmed the decision of the referee upon appeal by Pinecrest. Pine-crest then sought judicial review of the Board’s determination. The trial court, without reasons, affirmed the determination of the Board of Review. Pinecrest appeals. We affirm.
The issue on appeal is whether the trial court erred by affirming the determination of the Board of Review.
At the outset, we note that the scope of judicial review of a decision of the Board of Review is limited by LSA-R.S. 23:1634 which provides that findings of fact by the Board of Review, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the courts shall be confined to questions of law. The employer bears the burden of proving that a discharge resulted from disqualifying misconduct.
FACTS
James Loque was a patient at Pinecrest and was assigned to the cottage supervised by Ellis. Loque was approximately 5 ft. 7 in. tall, weighed 137 pounds and was in his 20’s. He was blind, retarded and could not communicate. He could not take care of any of his personal needs. He would spontaneously become very disturbed and was classified as a “head-banger.” He was not dangerous to those around him as he was blind, but when he went into one of his tantrums, he would flounce around somewhat wildly on the floor, hitting the floor repeatedly with his head. Loque had been assigned to Ellis’ cottage shortly before the alleged incident of March 17, 1981.
Marjorie Carter, an employee of Pine-crest, was assigned to the cottage supervised by Ellis and in which Loque was located. This witness testified that on March 17, 1981, Loque was lying on the floor hollering and hitting his head on the floor. She described Loque’s actions as creating quite a commotion. She stated that Ellis was attempting to quiet Loque and to get him to sit up. Carter stated that it was their duty to keep such patients from injuring themselves.
This witness stated that when Loque did not respond to Ellis’ attempt to get him to sit up, Ellis placed her feet upon Loque’s hands on the floor and struck him on the shoulder with a tennis shoe. She stated that the incident left a red mark on Loque’s shoulder. She stated that Kenneth Baker was present when the incident occurred.
It was brought to Carter’s attention on cross examination that her oral testimony varied from that of the typed statement previously made by her in connection with the investigation of the alleged incident.
Kenneth Baker, also an employee on duty at the time of the alleged incident, testified that he was not present in the room when the alleged incident took place. He did not see Ellis abuse Loque. He stated that when he came into the room, Ellis was standing near Loque telling him to get up and sit in *81 a chair. Mrs. Carter showed him where Loque’s shoulder had a red mark. Baker explained that Loque could have gotten the red mark by “banging and crawling around bumping into something.” He explained this type of patient commonly got red marks on their body by their own actions. The red mark had disappeared by the following morning. Baker also stated that Mrs. Carter called him after the incident and told him that she wanted to get with him to get their stories straight.
Ellis, an employee of Pinecrest for eight and one half years, was supervisor of the cottage. She emphatically denied having abused Loque by striking him with a tennis shoe. Faced with this evidence, the referee made the following findings of fact:
“... The claimant was accused of standing on a patient’s hands while he was lying on the floor and hitting him with a tennis shoe on his shoulders. The claimant denied this. The patient is known as a head-banger and is also blind. The patient’s name is James Logue (sic), and when he becomes upset, he lies on the floor and bangs his head and flounders around. On the afternoon of March 17, 1981, the patient, James Logue (sic), became upset and did not want to take his medicine and laid down on the floor and was floundering around and banging his head on the floor. The claimant tried to calm him down so he would not hurt himself. Mrs. Margie Carter reported that the claimant had the patient, James Logue (sic), lying face down and arms straightened out with the palms of his hands facing down and stood on his hands and was hitting the patient with a tennis shoe, trying to make him behave. The claimant denied this. Mrs. Carter reported the incident to the next Charge who came on duty, who in turn reported it to Mr. Winniferd Sibley, Supervisor. Mr. Sibley went to the cottage and found a red mark on the patient’s shoulder. The next morning, the red mark was gone. The claimant states the patient could have gotten the red mark by hitting the floor or something when he was floundering around and denied she had hit him. No one else saw the claimant do anything wrong.. ..

“From the evidence and facts presented, it is not clear to the Referee if the claimant actually hit the patient or not. It is clear that the patient was known as a head-banger and did get upset easily and could have hit something that put a red mark on him. However, the mark was gone the next morning. Mrs. Carter, witness for the employer, is the only party that claims she saw the claimant hit the patient which the claimant denies doing....”

We conclude that the Board of Review, in affirming the decision of the appeals referee, is supported by the record. The conflict of testimony was resolved in favor of Ellis. The referee has both the authority and the duty to make findings of fact based upon the testimony or other evidence according to his impressions of credibility of same. We conclude that the employer failed to establish by a preponderance of the evidence that Ellis committed the abuse of the patient, James Loque.
Ellis was also charged with wrongfully giving medication to patients. The charges involve one incident in each of the years of 1979, 1980 and 1981. The medication was given to the patients in two dosages; one at 4:00 P.M. and the other at 8:00 P.M. Ellis was accused of giving double dosages at 8:00 P.M. instead of giving the dosages at 4:00 P.M. and 8:00 P.M. as required by the attending physician.
Ellis, testifying at the hearing, stated that she told Mr. Stuckey, the superintendent of Pinecrest, that she had given double dosages of medicine once in 1979 and once in 1980. She clarified the circumstances surrounding each occurrence. In 1979, the 4:00 P.M. medicine was overlooked and her supervisor at that time, Ms. Aycock, told her to give both dosages at 8:00 P.M., but not to let it happen again. In 1980, Marjie Carter was bitten by a patient as she tried to give the 4:00 P.M. dosages and the medicine was not administered. No supervisor *82 could be reached so Ellis, relying on Ms. Aycock’s prior statement, administered both dosages at 8:00 P.M.
As to the March 17, 1981 dosages, Ellis stated that she was not present at the 4:00 P.M. dosage as she was in a medicine training class. The 4:00 P.M. double dosage was given by an employee, James Tolbert. Ellis stated that she did not instruct Tolbert to give both dosages at 4:00 P.M. She learned of the double dosage at 5:30 P.M. when she counted the medicine.
The evidence fully supports the findings of the referee which was affirmed by the Board of Review and the trial court. Ellis did not commit any intentional wrong on the three occasions with which she was charged with the wrongful administering of medications.
The record supports the Board of Review and the trial court in the conclusion that Ellis is qualified for unemployment compensation.
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.